### In re UTSTARCOM, INC. SECURITIES LITIGATION.

### No. C 04–04908 JW.

United States District Court,
N.D. California,
San Jose Division.

March 27, 2009.

Michael M. Goldberg, Glancy & Binkow, LLP, Los Angeles, CA, Patrick J. Coughlin, Darren Jay Robbins, Kimberly C. Epstein, Coughlin, Stoia, Geller, Rudman & Robbins, LLP, William S. Lerach, Lerach, Coughlin, Stoia, Geller, Rudman & Robbins, LLP, Rachele R. Rickert, Wolf, Haldenstein, Adler, Freeman & Herz, LLP, San Diego, CA, Sylvia Sum, Christopher Paul Seefer, Shirley H. Huang, Coughlin, Stoia, Geller, Rudman & Robbins, LLP, Bryan Jacob Ketroser, Wilson, Sonsini, Goodrich & Rosati, Mark Punzalan, Finkelstein, Thompson, LLP, San Francisco, CA, Philip Howard Gordon, Gordon Law Offices Chartered, Boise, ID, for Plaintiffs.

Boris Feldman, Cheryl Weisbard Foung, Terry T. Johnson, Bahram Seyedin-Noor, Bryan Jacob Ketroser, Wilson, Sonsini, Goodrich & Rosati, Amie Danielle Rooney, Scott Christensen Hall, Jason De Brette-

ville, Sullivan & Cromwell, LLP, Palo Alto, CA, Gregory A. Markel, Ronit Setton, Ronit Sutton's, Cadwalader, Wickersham & Taft, LLP, New York, NY, Inna Zatulovsky, Morgan, Lewis, Michael John Lawson, Morgan, Lewis & Bockius, LLP, Vincent P. Finigan, Jr., San Francisco, CA, Robert Andrew Sacks, Sullivan & Cromwell, LLP, Los Angeles, CA, for Defendants.

## ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS; GRANTING DEFENDANTS' MOTIONS TO STRIKE; DENYING MOTIONS TO INTERVENE AND TO STRIKE AS MOOT

JAMES WARE, District Judge.

## I. INTRODUCTION

This is a putative securities fraud class action brought on behalf of investors who acquired UTStarcom, Inc. ("UTStarcom" or "UTSI" or "Company") securities between February 21, 2003 and October 12, 2007 (the "Class Period"), against UTStarcom and certain of its officers and directors,[1] as well as Softbank Corporation ("SBC"), Softbank America, Inc. ("SBA"),

and Softbank Holdings, Inc. ("SBH")[2] (collectively, "Defendants"). In their Fourth Amended Complaint, Plaintiffs allege Defendants, *inter alia,* violated §§ 10(b), 14(a), and 20(a) of the Securities Exchange Act of 1934 ("the Exchange Act").

Presently before the Court are various motions brought by Defendants[3] and a Third Party[4] to this action. The Court conducted a hearing on January 16, 2009. Based on the papers submitted to date and oral argument, the Court DENIES Defendants' Motions to Dismiss, GRANTS Defendants' Motions to Strike, DENIES Third–Party's Motions to Intervene and to Strike as moot.

## II. BACKGROUND

The factual and procedural background in this action was detailed extensively in the Court's July 24, 2008 Order Overruling Defendants' Objections to Plaintiffs' Fourth Amended Complaint. (hereafter, "July 24 Order," Docket Item No. 242.) The Court reviews the procedural history relevant to the current motions.

In the July 24 Order, the Court overruled Defendants' objections to the struc-

---

1. The four UTStarcom Individual Defendants are Hong Liang Lu ("Lu"), Michael J. Sophie ("Sophie"), Ying Wu ("Wu"), and Thomas J. Toy ("Toy"). Lu was UTStarcom's Chief Executive Officer; Sophie was the Company's Chief Financial Officer; Toy was a member of the Board of Directors, chairman of the compensation committee, and a member of the Audit Committee; Wu was the CEO of the Company's Chinese subsidiary, UTStarcom China Company, Ltd.

2. SBA, SBH, and SBC are collectively referred to as "Softbank." Softbank was the Company's largest shareholder and third largest customer.

3. (UTStarcom Defendants' Motion to Dismiss Fourth Amended Consolidated Complaint for Violation of the Federal Securities Laws, hereafter, "UTSI Motion to Dismiss," Docket

Item No. 257; UTStarcom Defendants' Motion to Strike Options Allegations from Fourth Amended Consolidated Complaint for Violation of the Federal Securities Laws, hereafter, "UTSI Motion to Strike," Docket Item No. 258; Defendant Softbank's Motion to Dismiss Fourth Amended Consolidated Complaint, hereafter, "Softbank Motion," Docket Item No. 271.)

4. (Motion of James R. Bartholomew to Intervene Pursuant to Fed.R.Civ.P. 23(d)(2), 24(a)(2) and (b)(2), hereafter, "Motion to Intervene," Docket Item No. 252; Motion of James R. Bartholomew to Strike Allegations Pursuant to Fed.R.Civ.P. 12(f), hereafter, "Intervenor Motion to Strike," Docket Item No. 253.)

ture of the Fourth Amended Complaint.[5] (July 24 Order at 5.) The Court found that the Complaint adequately followed the Court's structural directions and was within the Court's stated page limit.[6] In addition, the Court overruled Defendants' objections to allegations of stock option backdating contained in the Complaint, on the ground that the Court had not previously prohibited amendment to allege backdating. (*Id.* at 6.) The Court instead invited Defendants to bring a motion to strike those allegations.

On September 5, 2008, the Court denied Defendants' motion to relate this action with *Rudolph v. UTStarcom, Inc.,* No. C 07–4578 SI, which is a stock option backdating case against Defendants, currently pending before Judge Illston in the Northern District of California.[7] (Docket Item No. 256.)

Presently before the Court are Defendants' Motions to Dismiss, Defendants' Motions to Strike, Third–Party's Motion to Intervene and to Strike.

### III. STANDARDS

#### A. *Motion to Dismiss*

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed against a defendant for failure to state a claim upon which relief may be granted against that defendant. Dismissal may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1988); *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 533–534 (9th Cir.1984). For purposes of evaluating a motion to dismiss, the court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir.1987). Any existing ambiguities must be resolved in favor of the pleading. *Walling v. Beverly Enters.,* 476 F.2d 393, 396 (9th Cir. 1973).

However, mere conclusions couched in factual allegations are not sufficient to state a cause of action. *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986); *see also McGlinchy v. Shell Chem. Co.,* 845 F.2d 802, 810 (9th Cir.1988). The complaint must plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Courts may dismiss a case without leave to amend if the plaintiff is unable to cure the defect by amendment. *Lopez v. Smith,* 203 F.3d 1122, 1129 (9th Cir.2000).

Claims brought under Section 10(b) of the Exchange Act and Rule 10b–5 must meet the particularity requirements of Federal Rule of Civil Procedure 9(b). *In re Daou Sys., Inc. Sec. Litig.,* 411 F.3d 1006, 1014 (9th Cir.2005). Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting

---

5. (Fourth Amended Consolidated Complaint for Violations of the Federal Securities Laws, hereafter, "4AC" or "Complaint," Docket Item No. 234.)

6. The Fourth Amended Complaint asserts three causes of action: (1) Violation of § 10(b) of the Exchange Act and SEC Rule 10b–5, against the Individual Defendants and UTSI; (2) Violation of § 14(a) of the Exchange Act and SEC Rule 14a–9, against the Individual Defendants and UTSI; and (3) Violation of § 20(a) of the Exchange Act, against the Individual Defendants and Softbank.

7. The lead plaintiff in the *Rudolph* action is James R. Bartholomew ("Bartholomew"). Bartholomew seeks to intervene in this action and moves to strike backdating allegations from Plaintiffs' Complaint.

fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b).

Moreover, claims brought under Section 10(b) and Rule 10b–5 must also meet the stringent pleading standards of the Private Securities Litigation Reform Act of 1995.[8] The PSLRA amends the Exchange Act to require that a private securities fraud litigation complaint "plead with particularity both falsity and scienter." *In re Daou,* 411 F.3d at 1014. Specifically, a complaint alleging securities fraud must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1); *In re Vantive Corp. Sec. Litig.,* 283 F.3d 1079, 1085 (9th Cir.2002).

▪ To plead a violation of § 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and SEC Rule 10b–5, 17 C.F.R. § 240.10b–5, a plaintiff must allege that (1) defendants made a material misrepresentation or omission; (2) the misrepresentation was in connection with the purchase or sale of a security; (3) the misrepresentation caused plaintiff's loss; (4) plaintiff relied on the misrepresentation or omission; (5) defendants acted with scienter; and (6) plaintiff suffered damages. *Dura Pharm., Inc. v. Broudo,* 544 U.S. 336, 341–42, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005). Each of these elements must be pleaded as to each defendant. *Id.*

### B. Motion to Strike

Pursuant to Federal Rule of Civil Procedure 12(f), "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The Ninth Circuit has held that "[t]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Fantasy, Inc. v. Fogerty,* 984 F.2d 1524, 1527 (9th Cir.1993) *rev'd on other grounds, Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994).

▪ However, "[m]otions to strike are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." *Neilson v. Union Bank of Cal., N.A.,* 290 F.Supp.2d 1101, 1152 (C.D.Cal.2003); *See, e.g., Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.,* 217 F.Supp.2d 1028 (C.D.Cal. 2002). Accordingly, such motions should be denied unless the matter has no logical connection to the controversy at issue and may prejudice one or more of the parties to the suit. *SEC v. Sands,* 902 F.Supp. 1149, 1166 (C.D.Cal.1995); *LeDuc v. Kentucky Central Life Ins. Co.,* 814 F.Supp. 820, 820 (N.D.Cal.1992). When considering a motion to strike, the court "must view the pleading in a light most favorable to the pleading party." *In re 2TheMart.com, Inc. Sec. Litig.,* 114 F.Supp.2d 955, 965 (C.D.Cal.2000).

## IV. DISCUSSION

### A. UTStarcom Defendants' Motion to Dismiss

UTStarcom Defendants move to dismiss the Complaint on the grounds that, *inter alia,* (1) certain allegedly fraudulent statements were not false when made; (2) the Complaint fails to plead a strong inference

---

**8.** The same heightened pleading standards under Rule 9(b) and the PLSRA apply to claims brought pursuant to Section 14(a) of the Exchange Act and SEC Rule 14a–9. *See Desaigoudar v. Meyercord,* 223 F.3d 1020, 1022 (9th Cir.2000).

of scienter; and (3) the Complaint does not adequately allege loss causation. The Court addresses each contention in turn.

### 1. Falsity of Defendants' Statements

Defendants contend that allegedly fraudulent statements made by Defendants Lu and Sophie relating to the strength of UTStarcom's China and international business were not false when made. (UTSI Motion to Dismiss at 8.) Defendants assert that Plaintiffs' Complaint does not cite to any contemporaneous documents or facts to show that Defendants' statements were false at the time they were made. (*Id.*) Plaintiffs contend that Defendants' statements about the strength of UTStarcom's international business were false when made because Defendants knew at the time they made the statements that there was no reasonable basis for their optimistic financial projections.[9]

The PSLRA has "exacting requirements for pleading falsity." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1070 (9th Cir.2008). A complaint "shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). "A litany of alleged false statements, unaccompanied by the pleading of specific facts indicating why those statements were false, does not

meet this standard." *Metzler*, 540 F.3d at 1070.

In this case, Plaintiffs allege [10] in relevant parts:

On 4/16/03, UTSI issued a press release and held a conference call to report the Company's 1Q03 results. During the 4/16/03 teleconference call, Lu and Sophie made the following statements:

Lu: The company also has the tremendous visibility based on our years worth of a backlog in order flow. The next three quarters are now in place.

Sophie: This all leads to a tremendous amount of visibility and we now have a backlog in place for the rest of the year.... [We] anticipate margins will improve slightly, perhaps the half percent—1% sequentially each quarter throughout 2003.... For the full year 2003, our target for gross margins as a percent of revenue is between 34% and 35%. (4AC ¶ 142.)

[However,] gross margins did not improve in 2003 from the 34% reported in 1Q03.... The failure to report gross margins in line with guidance establishes that the backlog did not provide tremendous visibility into future results in 2003. (4AC ¶ 144.)

The Complaint goes on to allege that on numerous other occasions, the Company issued press releases or held conference calls, in which Lu and Sophie made similar statements about the strength of UTStar-

---

9. (Plaintiffs' Opposition to UTStarcom Defendants' Motion to Dismiss Fourth Amended Consolidated Complaint and Motion to Strike Options Allegations from Fourth Amended Consolidated Complaint, hereafter, "Opposition to UTSI Motions," Docket Item No. 276.)

10. The Complaint contains a large volume of similar alleged misstatements, all of which

generally relate to projections about UTStarcom's business in foreign markets. (*See, e.g.,* 4AC ¶¶ 142, 181, 193, 205, 236, 248, 272, 300.) Given the volume of these allegations, the Court cannot review them all individually, instead, the Court confines its analysis to several representative allegations.

com's business and the demand for its products. For example:

During [a] 7/17/03 conference call relating to 2Q03 results, Lu and Sophie made the following statements:

Lu: [O]ur booking continues to be strong for the quarter, and as such, our visibility now extends into Q1 of 2004, an achievement we believe is unmatched in the industry. Because of this increased visibility, UTStarcom is again raising guidance for the year.

Sophie: UTStarcom views the rise in inventory and corresponding Increase in deferred revenues as a powerful indicator and is a direct reflection of the extraordinarily strong demand we are seeing for our products and translates into increased visibility, revenues and profits.... We continue to see the strength and growing demand across all product lines, both in mainland China and globally. (4AC ¶ 181.)

The substantial decline in Personal Access Systems ("PAS") orders from $453 million in 1Q03 to $245 million in 2Q03 establishes that there was not strong and growing demand across all product lines and that bookings were not strong for the quarter as Lu and Sophie represented.... (4AC ¶ 183.)

The Complaint alleges that Lu and Sophie continued to make such statements relating to "strong demand," despite the fact that bookings for PAS equipment continued to fall throughout each quarter of 2003. (See 4AC ¶¶ 193, 195, 205, 207.) Finally, the Complaint alleges that Defendants continued to issue guidance projections throughout 2004, based on demand for existing UTStarcom products and on the introduction of new products, however, the Company was ultimately unable to report margins and revenues in line with Defendants' guidance. (See id. ¶¶ 236, 238, 248, 250, 272, 274, 300, 302.) UTStarcom was, according to the Complaint, unable to meet guidance because demand for its products was actually declining, and the Company was experiencing, inter alia, operational difficulties, problems with new product development, and increased costs associated with backlogged sales. (See, e.g., id. ¶¶ 239, 251–52, 275–76, 303–04.)

█ The Court finds that the above allegations sufficiently plead specific facts showing why Defendants' statements were false when made.[11] See Metzler, 540 F.3d at 1070. First, Defendants are alleged to have stated that the Company was experiencing "growing demand across all product lines, both in mainland China and globally." (4AC ¶ 181.) At the same time, for

---

11. At the January 16, 2009 hearing, Defendants contended that Plaintiffs improperly confine their allegations to the demand for only a subset of Defendants' products. The Court understood Defendants to argue that Plaintiffs had made allegations solely relating to orders for PAS infrastructure equipment from particular customers, but had ignored contemporaneously strong demand for PAS handsets, as well as PAS orders from a broader range of customers. In support of these contentions, Defendants referred the Court to Exhibit 3 to the Complaint, which lists contracts for Defendants' PAS products, and to allegations contained in, inter alia, ¶ 147 of the Complaint. Upon review of these aspects of the Complaint, however, the Court is not persuaded that Plaintiffs have taken PAS equipment orders from China Netcom and China Telecom out of the larger business context to such an extent that their entire allegations of falsity are undermined. From this complicated scenario, the Court has distilled allegations that Defendants represented "growing demand across all product lines," where at least in some important product lines demand was allegedly declining at the time of the representation. (See 4AC ¶ 181 (emphasis added).) Should Defendants intend to create a defense based on the larger scope of the Company's business in 2003–04, Defendants will have an opportunity to do so after further factual development.

example, the Complaint alleges that demand for PAS equipment was sharply falling in China contemporaneously with Defendants' statements. Statements such as this explicitly go to current business conditions and are capable of being proven false at the time they were made.

Second, the Complaint is full of alleged misstatements implicit in Defendants' guidance projections, which related to profit margins and revenues. Unlike the statement discussed above, these statements were forward-looking,[12] and reflect the Company's predictions of future conditions, which may or may not come to pass. In the Ninth Circuit, a projection is a "factual misstatement if (1) the statement is not actually believed, (2) there is no reasonable basis for the belief, or (3) the speaker is aware of undisclosed facts tending seriously to undermine the statement's accuracy." *Provenz v. Miller*, 102 F.3d 1478, 1487 (9th Cir.1996).

In this case, Plaintiffs contend that the numerous alleged examples of declining demand, declining margins, operational difficulties, increased costs, and internal control problems "raise a strong inference [that] Lu and Sophie knew there was no reasonable basis for their financial guidance." (Opposition to UTSI Motions at 27.) Plaintiffs allege that Defendants were aware of these adverse circumstances at the time they made the statements. (*See, e.g.*, 4AC ¶¶ 146–50.) Assuming that these alleged underlying complications had occurred at the time of Defendants' guidance statements and that Defendants were aware of the complications, Plaintiffs may be able to prove that Lu and Sophie had no reasonable basis for their optimistic financial predictions. Indeed, proof of these allegations may ultimately show that Defendants' projections were impossible to meet in light of the mounting difficulties the Company's overseas business was facing during the Class Period. At the very least, Plaintiffs have alleged that Lu and Sophie were "aware of undisclosed facts

12. Notably, the safe harbor provision of the PSLRA provides that a defendant "shall not be liable with respect to any forward-looking statement if: (A) The forward-looking statement is (I) identified as a forward-looking statement, and is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement; or (ii) immaterial; or (B) the plaintiff fails to prove that the forward-looking statement (I) if made by a natural person, was made with actual knowledge by that person that the statement was false or misleading...." 15 U.S.C. § 78u–5(c)(1). The PLSRA defines a forward-looking statement as "a statement containing a projection of revenues, income (including income loss), earnings ... or other financial items" or "a statement of future economic performance" or "any statement of the assumptions underlying or relating to any statement described [above]." *Rosenbaum Capital, LLC v. McNulty*, 549 F.Supp.2d 1185, 1190 (N.D.Cal.2008) (citing *id.* at § 78u–5(i)(1)).

In this case, to the extent Plaintiffs allege misstatements with respect to current business conditions, they fall outside of the PLSRA safe harbor. *See id.* Defendants contend, however, that many of their forward-looking guidance statements were accompanied by cautionary warnings that would place them within the protective ambit of the safe harbor. (UTSI Motion to Dismiss at 35–37.) Plaintiffs respond that many of the alleged business setbacks suffered by Defendants had already occurred at the time of the statements, and therefore necessarily impacted the accuracy of Defendants' guidance. (Opposition to UTSI Motions at 42.) The Court finds that the application of the PLSRA safe harbor to any purely forward-looking statements involves a factual dispute that is not appropriately resolved at the pleading stage. It suffices that, at present, Plaintiffs have alleged that UTStarcom had suffered relevant business impairments prior to Defendants' optimistic guidance statements. Defendants will later have an opportunity to prove that, in fact, they issued guidance in a manner consistent with application of the safe harbor.

tending seriously to undermine" the accuracy of their financial guidance. *Provenz,* 102 F.3d at 1487.

Accordingly, the Court finds that Plaintiffs have adequately pleaded statements about UTStarcom's international business that were allegedly false when made. Thus, the Court DENIES UTStarcom Defendants' Motion to Dismiss on this ground.

### 2. Scienter

Defendants contend that the Complaint fails to plead a strong inference of scienter, as required by the PLSRA. (UTSI Motion to Dismiss at 16.) Plaintiffs contend that they have alleged facts from corroborating sources, which raise a strong inference that Defendants Lu, Sophie, Wu, and Toy knew or were deliberately reckless in not knowing that UTStarcom's financial reporting was materially false and misleading. (Opposition to UTSI Motions at 5.)

The Supreme Court has defined "scienter" as a "mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193–94 n. 12, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). In the Ninth Circuit, recklessness (as a form of intentional conduct) has long sufficed to establish scienter for § 10(b) purposes. *Nelson v. Serwold,* 576 F.2d 1332, 1337 (9th Cir.1978).

Congress enacted the PSLRA to "deter opportunistic private plaintiffs from filing abusive securities fraud claims, in part, by raising the pleading standards for private securities fraud plaintiffs." *In re Silicon Graphics Inc. Sec. Litig.,* 183 F.3d 970, 973 (9th Cir.1999). Post–PSLRA, a plaintiff must allege with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind. 15 U.S.C. § 78u–4(b)(2). At minimum, a plaintiff must plead particular facts giving rise to a strong inference of deliberate recklessness. *In re Silicon Graphics,* 183 F.3d at 979. In determining whether a plaintiff has adequately alleged scienter, a court must consider whether the totality of the plaintiff's allegations, although individually lacking, gives rise to the "strong inference" required by the PSLRA. *Nursing Home Pension Fund, Local 144 v. Oracle Corp.,* 380 F.3d 1226, 1230 (9th Cir.2004).

Congress did not further define the "strong inference" requirement. The Supreme Court has recently clarified the requirement. To determine whether a plaintiff has alleged facts giving rise to a "strong inference" of scienter, a court must consider both (1) plausible nonculpable explanations for the defendant's conduct; and (2) inferences favoring the plaintiff. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 127 S.Ct. 2499, 2510, 168 L.Ed.2d 179 (2007). Evidence of scienter must be more than merely "reasonable" or "permissible"—it must be "cogent" and "at least as compelling as any opposing inference one could draw from the facts alleged." [13] *Id.*

In this case, Plaintiffs allege that all Defendants made numerous material misstatements on the Company's SEC Form 10–K and Form 10–Q filings, as well as in the Company's Sarbanes–Oxley certifications, which were signed by Defendants Lu and Sophie. (4AC ¶¶ 66–76.) Plaintiffs have alleged a number of facts, which they contend—in their totality—plead with sufficient particularity that those misstatements were made with scienter. Given the volume of allegations relating to scienter,

**13.** This is because "[a]n inference of fraudulent intent may be plausible, yet less cogent than other, nonculpable explanations for the defendant's conduct." *Id.*

the Court summarizes the most relevant allegations:

Every financial statement issued during the Class Period was materially false and misleading. (4AC ¶ 6.) The Company improperly recognized $400 million of revenue between 2000 and 2005 on 84 sales transactions because sales contracts were amended or supplemented with product upgrade provisions that precluded revenue recognition. (Id. ¶ 80.) As a result, the Company has issued three financial restatements. (Id. ¶¶ 72–76.)

In an independent investigation, the SEC concluded that Lu, Sophie and the Company's Audit Committee, including Toy, had been on notice since at least March 2003 of significant internal control weaknesses, including the use of side letters and contract amendments precluding revenue recognition that were not forwarded by sales offices to the contract and finance departments. (4AC ¶ 81.) Defendants had received several Management Recommendation Letters from the Company's auditors, which detailed various internal control weaknesses. (Id. ¶¶ 81–82.) Information provided by former UTSI employees establishes that the revenue recognition problems—including the Company's auditors' concerns about revenue recognition—were well known throughout the Company. (Id. ¶ 92.) The SEC report on securities violations at the Company found that "[d]espite being put on notice of potential accounting issues [Lu and Sophie] failed to implement and maintain adequate internal controls and falsely certified that UTSI's financial statements and books and records were accurate." (Id. ¶ 9.)

The Individual Defendants knew adequate and effective disclosure controls and procedures were particularly important at UTSI because Defendants had reported in a Form 10–K that the Company's growth had placed significant strain on management, financial, and other resources; that sales in China accounted for at least 79% of Company revenue in 2003–04; that side contracts with non-standard product upgrade provisions were standard at the Company and precluded revenue recognition; and that Defendants were aware of significant internal control weaknesses related to revenue recognition. (4AC ¶ 99.) In addition to being aware of internal control deficiencies, Defendants Lu and Sophie were aware of undisclosed problems with product development and with the decline in the Company's China business. (Id. ¶¶ 146–47.) Related to these and other accounting issues detailed in the Complaint, the Company committed numerous GAAP [14] violations. (Id. ¶¶ 125–130.)

Sophie resigned on 4/13/06 as the Company and the SEC were conducting investigations of the Company's financial reporting, and just before the second restatement was publicly disclosed on 5/24/06. (4AC ¶ 101.) A confidential witness, who was a UTSI manager of financial planning, stated that the Company wanted to get rid of the regime that had caused so many problems for the Company. (Id.) On 5/10/06, the Company announced that Lu would resign by the end of the year. Wu, the CEO of UTSI–China, was terminated on 6/1/07 and on 7/24/07, the Company announced that it was investigating historical sales contracts with customers in China. (Id. ¶ 103.) The investigation led to a finding that the Company had improperly recognized $278.6 million of revenue

14. Generally Accepted Accounting Principles.

over six years on 78 China sales transactions. (*Id.*)

Defendants and other Company insiders sold 1,620,103 shares of UTSI stock in the first eleven months of the Class Period for $58 million. (4AC ¶ 135.) These sales occurred when the Company's stock price increased 150% compared to 34% for the Company's peer group, but while Defendants were aware of declining China demand, overstated earnings due to significant internal control weaknesses, and pervasive operational problems that were delaying delivery of products and causing the Company to deliver defective products. (*Id.*)

■ Plaintiffs contend that, taken together and including numerous additional allegations in the Complaint, the above allegations support the strong inference of scienter that is required for pleading securities fraud under the PLSRA. First, the Court notes that the $400 million in allegedly restated revenues supports an inference of scienter. The Ninth Circuit has held that "if properly pled, overstating of revenues may state a claim for securities fraud, as under GAAP, revenue must be earned before it can be recognized." *Daou*, 411 F.3d at 1016. In this case, revenues were overstated by a considerable amount, from which it is possible to infer that those revenues were overstated intentionally so as to have an impact on the price of UTStarcom securities.

Relatedly, "[v]iolations of GAAP standards can provide evidence of scienter; when significant violations are described, they provide powerful indirect evidence of scienter." *In re Impax Laboratories, Inc. Sec. Litig.*, No. 04–4802, 2007 U.S. Dist. LEXIS 52356, at *24 (N.D.Cal. July 18,

2007) (citing *id.*) Here, the Complaint alleges a variety of GAAP violations, including the revenue overstatements, an unreported $26.7 million in stock compensation expenses, an unreported $7.5 million impairment charge, and impairment charges relating to misreporting of goodwill. (*See* 4AC ¶¶ 112, 125–130.) Although it is possible to infer negligence from these accounting problems, as opposed to scienter, the Court finds that the magnitude and extent of the problems, as alleged in the Complaint, gives rise to at least an equally strong inference of scienter.

Second, this inference is strengthened by the allegations that Defendants were made aware, throughout 2003–04 of significant internal control problems relating to revenue recognition. Even the SEC found that, despite this awareness, Defendants did not implement the proper control measures and continued to report and certify false revenue data.[15] Plaintiffs allege that Defendants had received critical reports from the Company's auditing firm, and that the revenue detection problems were well known throughout the Company. In addition, as discussed in the previous section, Defendants Lu and Sophie were allegedly aware of numerous complications with respect to the Company's international business, at the same time they were representing that international demand was strong and issuing unreasonably optimistic financial guidance.

Third, Plaintiffs have alleged that Defendants Lu, Sophie, and Wu all resigned or were terminated contemporaneously with the Company's financial restatements and the initiation of internal and SEC investigations into UTStarcom's financial activities. Although proximate resigna-

---

**15.** Although the SEC ultimately decided not to prosecute Defendants for fraud, the Court finds that the SEC's discretionary determination with respect to prosecution is not determinative of whether Defendants, in fact, committed securities fraud.

tions of high-ranking officers or directors do not alone support scienter, "when corporate reshuffling occurs in tandem with financial restatements, these changes add one more piece to the scienter puzzle." *Impax*, 2007 U.S. Dist. LEXIS 52356, at *26–*27. Here, as alleged, in its announcement regarding Lu's resignation, the Company revealed that SEC staff had recommended that the SEC file a civil injunctive action against Lu for violation of § 10(b) of the Exchange Act. (4AC ¶ 102.) At the very least, the timing of Defendants' departures might suggest that the Company believed Defendants had been involved in wrongdoing with respect to corporate finances. Even though it is also possible to infer, for example, that Defendants left of their own volition or that they were removed for mismanagement unrelated to wrongdoing, the Court finds that the proximity of Defendants' departures to the financial restatements and investigations adds "one more piece to the scienter puzzle." *Impax*, 2007 U.S. Dist. LEXIS 52356, at *26–*27.

Finally, Plaintiffs have alleged that Defendants engaged in significant trading in the Company's securities, both while the Company's stock price was at its maximum and while Defendants are alleged to have been aware of undisclosed information that would have negatively affected the stock price. "[U]nusual or suspicious stock sales by corporate insiders may constitute circumstantial evidence of scienter … when it is dramatically out of line with prior trading practices at times calculated to maximize the personal benefit from undisclosed inside information." *Silicon Graphics*, 183 F.3d at 986. Here, the Complaint alleges that Defendants collectively reaped proceeds of roughly $40 million on securities sales during 2003–04, and that Defendants Sophie and Toy each sold over 98% of their respective stock holdings during that period. (4AC ¶¶ 135–36.) The Court finds that the timing and magnitude of the stock sales, as alleged, support an inference of scienter.[16]

In sum, Plaintiffs have alleged (1) financial restatements of approximately $400 million; (2) significant GAAP violations related to, *inter alia*, improper revenue recognition; (3) Defendants' knowledge that there were extensive internal control problems relating to revenue recognition; (4) Defendants' knowledge of declining foreign business while simultaneously making statements about increases in foreign business, as well as unreasonably optimistic financial guidance relating to the Company's foreign business; (5) Defendants' terminations and resignations, which occurred contemporaneously with the financial restatements and the commencement of internal and SEC investigations; and (6) Defendants' large-scale transactions in UTStarcom securities at the same time that both price was increasing and Defendants possessed undisclosed information that had the potential to negatively impact the stock price. Although each of these allegations is, by itself, subject to competing inferences, the Court finds that the inference of scienter from the totality of the allegations is "at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 127 S.Ct. at 2510.

---

**16.** Defendants contend that their securities sales are not suspicious because they were made according to preestablished 10b5–1 plans and were thus nondiscretionary. (UTSI Motion to Dismiss at 27.) The Court finds that, although evidence of the nondiscretionary nature of Defendants' sales may ultimately provide the basis of an affirmative defense at a later stage of the litigation, it suffices that, at the pleading stage, Plaintiffs have alleged significant and suspiciously timed securities sales.

Accordingly, the Court finds that Plaintiffs have adequately pleaded a strong inference of scienter. Thus, the Court DENIES UTStarcom Defendants' Motion to Dismiss on this ground.

### 3. Loss Causation

Defendants also move to dismiss Plaintiffs' Complaint on the ground that Plaintiffs have not adequately alleged loss causation. (UTSI Motion to Dismiss at 43–45.)

■■ To adequately plead loss causation, a plaintiff must allege a causal connection between the defendant's material misrepresentation and the plaintiff's loss; that is, the "misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security." 15 U.S.C. § 78u–4(b)(4); *Dura Pharm.*, 544 U.S. at 341, 125 S.Ct. 1627; *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir.2005). The plaintiff "must allege … that the *subject* of the fraudulent statement or omission was the cause of the actual loss." *Lentell,* 396 F.3d at 173 (quoting *Suez Equity Investors, L.P. v. Toronto–Dominion Bank,* 250 F.3d 87, 95 (2d Cir.2001) (emphasis in original.)) If a plaintiff alleges a fraud on the market, a mere allegation of an inflated purchase price does not constitute or proximately cause a relevant economic loss. *Dura Pharm.*, 544 U.S. at 342, 125 S.Ct. 1627.

■ In this case, the Court finds that the Complaint contains detailed allegations of loss causation, sufficient to survive a motion to dismiss. (*See, e.g.,* 4AC ¶ 395; Opposition to UTSI Motions at 48–49.) Although the Complaint concedes that none of the Individual Defendants ever made a complete corrective disclosure, the Complaint does allege that Defendants "did gradually walk the stock down by partially disclosing *some* of the previously concealed problems and *some* of the impact those problems were having on UTSI's current financial condition and would have on the Company's future results." (4AC ¶ 396 (emphasis in original).) The Complaint goes on to enumerate twenty-one alleged partial disclosures that had adverse effects on the Company's stock price. (*Id.*)

For example, Plaintiffs allege that

On 7/28/04, the Company's stock price declined 29.3% … compared to a 0.6% decline in both the PPG and NASDAQ after UTSI revealed on 7/27/04 that there were problems with its disclosure controls and revenue recognition. UTSI reported that it did not recognize $28.7 million of higher margin international revenue because it took longer to deliver new products and receive final acceptance.

(4AC ¶ 140.) In light of Plaintiffs' allegations that Defendants made misstatements relating to disclosure controls and revenue recognition, and that UTStarcom stock price increased as a result of those misstatements, the Court finds that these allegations of loss causation are adequate to survive a motion to dismiss.[17] (*See id.* ¶¶ 66–69.)

The Court recognizes Defendants' contention that UTStarcom stock price actually increased after the issuance of several financial restatements. (UTSI Motion to Dismiss at 43–44.) As discussed above,

17. Given the volume of loss causation allegations in the Complaint, the Court cites one allegation from ¶ 140 as a representative example. Upon review of the Complaint, the Court finds that there are numerous additional examples of corrective disclosures and corresponding stock price drops that connect to allegations of material misstatements. (*See, e.g.,* 4AC ¶¶ 140–41;178–80; 190–92; 202–04; 391–97.)

however, the Court finds that the Complaint contains numerous examples of partial corrective disclosures that the Court finds are sufficient to meet the loss causation requirement. To the extent that stock price actually increased after corrective disclosures, Defendants will have the opportunity after discovery to demonstrate that, in fact, the subject of the alleged misrepresentations did not cause Plaintiffs' claimed loss.[18]

Accordingly, the Court finds that Plaintiffs have adequately pleaded loss causation. Thus, the Court DENIES UTStarcom Defendants' Motion to Dismiss on this ground. In sum, the Court DENIES UTStarcom Defendants' Motion to Dismiss.

### B. *UTStarcom Defendants' Motion to Strike*

The UTStarcom Defendants move to strike allegations of stock option backdating from the Complaint, on the ground that the allegations are duplicative of those in the *Rudolph* action currently pending before Judge Illston. (UTSI Motion to Strike at 1.)

 In this case, the Court finds that permitting Plaintiffs to continue to pursue their backdating allegations would "create serious risks of prejudice" to Defendants, because Defendants would essentially be forced to defend the same claims simultaneously in two actions in the same district. *See Fantasy*, 984 F.2d at 1528. Such a scenario would be financially burdensome to Defendants, would run the risk of inconsistent results, and would be an inefficient use of judicial resources.

In addition, the Court finds that backdating allegations are not related to the allegations that make up Plaintiffs' core theory in this case. Indeed, in denying a motion to relate this action with the *Rudolph* case, the Court has already ruled that this case "primarily focuses on alleged false representations regarding UTStarcom's sales in the Chinese market," whereas *Rudolph* "primarily focuses on options backdating." (November 30, 2007 Order Denying Motion to Relate Cases at 1, Docket Item No. 225.) The Court found that these theories would involve distinct loss causation and class periods. As such, allegations of backdating are "immaterial" to this action within the meaning of Rule 12(f).

Accordingly, the Court GRANTS Defendants' Motion to Strike allegations of stock option backdating from the Fourth

---

**18.** On February 11, 2009, Defendants filed a Request to Submit Statement of Recent Authority pursuant to Civ. L.R. 7–3(d). (*See* Docket Item No. 301.) The Court has examined *Shoretel Inc., Securities Litigation*, No. C 08–00271, 2009 WL 248326 (N.D.Cal. Feb. 2, 2009.) The Court finds that *Shoretel* is distinguishable. First, *Shoretel* involves an alleged Section 11 violation which is not at issue in this case. Second, the plaintiffs in *Shoretel* affirmatively alleged that the putative class was damaged by the stock drop caused by defendant's single press release. The court found, however, that because the press release did not disclose any of the alleged misrepresentations, the plaintiffs merely demonstrated that "the market reacted poorly to [the] defendant's poor financial health ... rather than to a disclosure of the Registration Statement's allegedly false and misleading representations." *Id.* at *5. In contrast, Plaintiffs in this case allege that the corrective disclosures were more than mere reflections of Defendants' poor financial health. Plaintiffs allege that the disclosures directly contradict Defendants' purportedly false statements, and that there were immediate reductions in Defendants' stock price in the wake of those disclosures. For example, Plaintiffs allege that Defendants made misstatements relating to the quality of revenue recognition, and that subsequent disclosures reflected that revenue recognition was not of the quality represented by Defendants. (*See* 4AC ¶ 140.)

Amended Consolidated Complaint.[19]

## C. *Softbank Defendants' Motion to Dismiss*

Defendant Softbank moves to dismiss Plaintiffs' § 20(a) claim on the grounds that Plaintiffs do not allege a primary violation and that Plaintiffs do not allege that Softbank ever exercised day-to-day operational control over UTSI. (Softbank Motion at 2.)

Under § 20(a) of the Securities Exchange Act of 1934, any person who controls a person liable for violating § 10(b) is jointly and severally liable for the violation. 15 U.S.C. § 78t(a). To adequately allege a § 20(a) violation, a plaintiff must state (1) a primary violation of federal securities law and (2) that the defendant exercised actual power and control over the primary violator. *Howard v. Everex Sys., Inc.* 228 F.3d 1057, 1065 (9th Cir.2000). The SEC has defined "control" to mean "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through ownership of voting securities, by contract, or otherwise." 17 C.F.R. § 230.405. "[I]n order to make out a prima facie case, it is not necessary to show actual participation or the exercise of actual power; however, a defendant is entitled to a good faith defense if [it] can show no scienter and an effective lack of participation." *Howard,* 228 F.3d at 1065.

In this case, as discussed above, Plaintiffs have adequately alleged a primary violation under § 10(b). Thus, the Court proceeds to consider whether Plaintiffs have sufficiently pleaded Softbank's control over UTSI. With respect to their § 20(a) claim, Plaintiffs allege as follows:

During the Class Period, non-party Masayoshi Son was the President, CEO, Chairman and largest shareholder of Softbank. (4AC ¶ 34.) Son also co-founded UTSI and served as UTSI's Chairman of the Board from October 1995 to March 2003, and as a director until September 15, 2004. (*Id.* ¶ 35.) UTSI reported in its 2002 Form 10–K that Son was Softbank's designee on UTSI's Board of Directors and that Son signed UTSI's Forms 10–K for 2002 and 2003. (*Id.*) Softbank was UTSI's third largest customer and its largest shareholder. (*Id.* ¶ 36.) In its Form 10–K for 2002, 2003 and 2004, UTSI stated that "Softbank Corp. and its related entities, including Softbank America, Inc., have significant influence over our management and affairs...." (*Id.* ¶ 37.)

The Individual Defendants and Softbank, by reason of their status as senior officers and/or directors (including Softbank through Son and his ownership in and business ties to UTSI), were "controlling persons" within the meaning of § 20 of the 1934 Securities Exchange Act, and had the power and influence to cause UTSI to engage in the unlawful conduct complained of. Because of their positions of control, the Individual Defendants and Softbank were able to and did, directly and indirectly, control the conduct of UTSI's business. (4AC ¶ 410.)

These allegations provide that Softbank had the power to, and did, direct the affairs of UTSI through its relationship with non-party Masayoshi Son and its position as UTSI's largest shareholder and third largest customer. Such allegations are sufficient at the pleading stage. The intensely factual questions surrounding Soft-

---

**19.** In light of the Court's finding with respect to the UTStarcom Defendants' Motion to Strike, the Court DENIES the Third–Party's Motions to Intervene and to Strike as moot.

980

bank's actual participation in the day-to-day affairs of UTSI relate to any good faith defense that Softbank may choose to assert in response to Plaintiffs' allegations. *See Howard,* 228 F.3d at 1065.

Accordingly, the Court finds that Plaintiffs have properly alleged control person liability under § 20(a) with regard to Defendant Softbank. The Court DENIES Defendant Softbank's Motion to Dismiss.

## V. CONCLUSION

The Court DENIES Defendants' Motions to Dismiss, GRANTS Defendants' Motions to Strike and DENIES Third-Party Motions to Intervene and to Strike as moot. Defendants shall file a responsive pleading pursuant to Fed.R.Civ.P. 12(a)(4)(A), or later if the parties so stipulate.

The parties shall appear for a Case Management Conference on **April 27, 2009 at 10 a.m.** On or before **April 17, 2009,** the parties shall meet and confer and file a Joint Case Management Statement. The Statement shall include a good faith discovery plan with a proposed date for the close of all discovery and whether the Court should bifurcate discovery between class and merits. The Statement shall also inform the Court of the parties' settlement efforts to date, if any.